Call the next case. Case number 21-2058 United States v. Johnson. Good morning, Hans Erikson for Nathaniel Johnson. This is a photograph from the record. It is also included on page 8 of the brief-in-chief. It is supposed to show drugs in plain view, drugs that are immediately apparent to Agent Perry when he looks inside this bag, but it doesn't show that. But of course one photograph doesn't reveal all the different angles and the length of time and it's not a full representation of what one would have seen in person. I agree it's not as good as being there in person, your honor, but this photograph is a little bit My Agent Perry, it staged himself after he searched the entire bag and he adopts this photo as what he was looking at when he made the decision to arrest Mr. Johnson and search the inside of his bag. It's also what the court saw when it decided that the contents of this bag were in plain view. Did the court make a finding about that staged photograph? Whether it could truly be an unusual circumstance? I agree I wasn't there for that hearing, but it doesn't appear that there was any real dispute about whether this was an accurate representation of what was there. And actually while we're talking about that, I do want to make a point of clarification that there are a number of photos that are in the record. They're all photographs that are taken by Agent Perry when he's back in his station house. Some of them you can see foiled. After he's gone through the bag. When everything's said and done, he's preparing his reports. In some of the photographs you can see foil through the clothes or you can see the foil wrapped object sticking out from the clothes. Those are not representative of what he sees. This is the only photograph, if I'm remembering correctly, that is actually what he sees. So at the time he makes that decision to arrest Mr. Johnson and he makes the decision, makes the conclusion that there are drugs in plain view. This is all he sees. So he hasn't touched the object. He doesn't know how heavy it is or what it feels like. Of course in making that decision about what he has seen, the agent can certainly take into account the history or the prelogue to that as well, Andy. The agent, isn't it informative of what you see, which is the stories and the response of the defendant and the way he's conducted, allowed the search to conduct and so forth. So we have to look at it with the preceding information to be informative, right? The conclusions that the agent in the court makes have some relevance both to the totality of the circumstances analysis that they do with respect to probable cause to arrest Mr. Johnson and also with the conclusion about whether the drugs are in plain view. So I think to some extent... So your answer is yes to that question? Yes, yes and I think one good example of that is say Texas v. Brown where we have the there's also loose white powder in the vicinity and some plastic vials. So I think that's a case where it's safe to assume that the court was also considering those other things that were nearby. But I think that case is also a good example of just how obvious it is supposed to be what is in a closed container. And I would urge the court to consider the clothes that the object is within as a closed container. Because there's no question that the officer can't actually, can't literally see what's in the container. He can't see that this is an object that's covered by the clothes in the back. And in order for someone to seize a closed container, it should have a distinctive configuration that proclaims its contents. That's not what we have here but I think it is safe to say that in a case like Texas v. Brown where you see those party balloons tied off and then you might have those extra factors like the loose white powder, that's safe to say that the contents are proclaimed. Or a case like US v. Angelos, that's where the officers see a couple of duffel bags that smell very strongly of marijuana and they have marijuana residue on top of them. It's a situation where there's really not much question about what's inside the container. Looking at examples like that, I think it's easy to see how far short this case falls from situations where the court has appropriately the plain view exception. When he touched the object within the clothes, didn't it crinkle? Like duct-taped? Yes, he did. Do you usually duct tape stuff in your dirty clothes? I can't say that I have, Your Honor. What I would point out, Your Honor, is that when he reaches in and handles the object, that's part of his seizure, his plain view seizure. It's also a search of the object. So at that point, he has additional information that he would not have had and he should not have had because he didn't have a right to seize or to search that object at the time. So if the court... Was there a finding about his intent? I mean, it's one thing if you're doing something in order to obtain information, that can be a seizure or search rather. But if it's an incidental touch because you're doing something else and your purpose is not to obtain information, is that still a search or has that been judged by a different standard? Fortunately, I don't think we have to worry about in this case because it's very difficult to believe that his touching this object was merely incidental. Obviously, there are cases where Agent Perry is feeling the outside of a container, an outside of a suitcase on the train to feel what it feels like or how heavy it is. This is a relative to the size... But he said that it was in connection with putting the clothes back. I mean, we know the clothes were taken out. Oh, sure. Things were being observed. Oh, sure. The defendant was observing, oh, this is dirty stuff. You don't want to touch this stuff. It's really old, old laundry. So he was putting all that stuff back and I believe he said it was an incidental touch until the very end after the arrest. I think at that point he said he didn't touch it. Well, I think those are important questions. This is the photograph. The object is still in the bag at this point. So if he took it out at some point, the reason was he had already seized it. So it's here in the bag. All he needs to do to take it away is close it and zip it up. There's no reason that he should have had any incidental contact with it. But let me clarify what... because you've got several issues here and I guess I'm trying to focus in on what... whether you're talking about all three issues, whether you're talking about the probable cause to arrest, whether you're talking about the search that occurred on the bus or the search that occurred when he gets to the... Basically everything I've said so far is about whether there was a valid plain view exception to the warrant requirement. Now that question is somewhat related to the question about the reasonableness of the district court's conclusion about whether there was probable cause to arrest Mr. Johnson because obviously both the district court and Agent Perry thought it was very important that Agent Perry had seen this object in the clothes. I think it's safe to say that the other factors that the agent and the court were considering were not really close to the probable cause level. They were these factors that are very consistent with innocent conduct and once Agent Perry says that he's seen this, it's a big jump to get to the next level and that's where he's arrested Mr. Johnson and seized him. Right, and then he actually... Agent Perry testifies that when the... after the defendant's been arrested, he's off the bus, he then picks up and that's when he handles the item. That's right. The long johns or whatever he's got. That's when he actually picks it up. I think the government says he didn't, but he did testify that he picked up that item at that point, right? Yes, the government's argument, I think, is along the lines of what Your Honor was saying about whether it was incidental or not, but there isn't any dispute about the timing being... Mr. Johnson is arrested, he's handed off to... he's handcuffed and handed off to a second officer and at that point Agent Perry reaches in. He doesn't suggest that it was incidental. He does not. Okay. He also readily admits that he gets additional information that is supporting his conclusion that it is drugs. So he reaches in, he feels it, he doesn't... But he can't really do that unless it's a foregone conclusion what it is. That's right. Your argument is before he ever handled it, it was not a foregone conclusion despite his testimony that this is what he thought it was. That's right, that's right. And the foregone conclusion, that's to Agent Perry's right to search the closed container itself, to open it without... To open it. Right. So we have first the plain view seizure. The plain view seizure, even if it's proper, doesn't mean it's proper for him to search the object itself, to open it. I don't think there's really any question that when he when he starts to feel it, to crinkle it, to pick it up, see how much it weighs, that's tantamount to a search of the object, to an opening of it. So that's a much higher level. That requires virtual certainty about what's inside and I submit that we're very far away from that. And the information he gets through that search, it all flows from what we see in this picture. So that's a long way to go. So a foregone conclusion. You're not challenging the doctrine itself, you're challenging whether the factual application of it is appropriate here. Is that right? That's right. I have no issue with the rule. I just want to clarify that we have multiple levels here. One is to get to the plain view seizure. The other is the search of the object itself, which would require it to be a foregone conclusion, which required to be a virtual certainty what was inside the closed container. And the further point of clarification, I may have already said this, but I urge the court to consider the clothes, the long johns, as the closed container. If the object is in those clothes, there's no question he can't see the drugs. Let me ask you a question about this virtual certainty of what's inside question. Do you think that it's enough to say I'm virtually certain that this is drugs, because this is the way people package drugs? Or do you think it would have to be I'm virtually certain it's cocaine? And then further than that, what if you go on the other extreme and say I'm virtually certain it's illegal, but it may be counterfeit money, or it may be stolen credit cards. But so what do you have to be virtually certain of? What degree of particularity of the certain of? It's very hard for me to imagine a situation where an officer would have virtual certainty about the contents of a container, and not also be fairly certain about what the contraband was. If he was mistaken that it was. So is your answer, the virtual certainty requires certainty, or virtual certainty of the nature of the contents, not just the not just the illegality of them, but their actual nature. It's heroin, or it's cocaine. And then that question is, are those packaged differently for a transporter of contraband? I have to admit, Your Honor, that I don't believe there's anything in the record that suggests that a particular drug is packaged in one way versus another. I think that under the facts of this case, what I would focus on is that, at least much question that Agent Perry thought it was drugs, and that's what he found. I would like to reserve a few minutes, if it's all right, for rebuttal. Thank you. Good morning, Your Honors. My name is Taylor Hartstein. I am appearing on behalf of the United States, and may it please the Court, I'd first like to address a couple of things that Mr. Erickson brought up. First, with respect to the photo, and saying that it's impossible to see in the photo whether there's a bundle. That is undermined by both the other supplemental record photos that are in the record, that's photos four, five, and six. Now photo five shows some of the tinfoil, and admittedly, Special Agent Perry didn't see the tinfoil when the bag was opened on the bus. However, at that time, Mr. Johnson was moving the objects around, and that presents more information than one four by four inch photograph, you know, that's shown to the Court of Appeals two years later. So he hadn't seen the tinfoil by the time he, when the defendants off the bus, and he picks up the item, and handles the item. He still hadn't seen the tinfoil. That's correct, Your Honor. Special Agent Perry hadn't seen the tin, did not see the tinfoil until he later removed the bundles from the long underwear at the DEA headquarters. However, on the recording and in the transcript that the district court rendered, it's clear that within a few seconds of Special Agent Perry starting to look into the backpack, he says, what about that right there? Black bundle right there. So to claim that it's impossible that he saw a black bundle, and we have a recording of him saying shortly after being shown the objects in the backpack, that there's a black bundle. Well, it wasn't really a bundle, it was clothing inside a backpack or a bag, right? I mean, I would call that like, you're making it sound as though it was a wrapped bundle. It was some sort of clothing item wrapped around something. Sure, Your Honor. I think that a lot of what the terminology that is used, that was used below, is a bulge within a sleeve, which Special Agent Perry testified was consistent with his experience of how narcotics traffickers transport illegal narcotics. And with respect to the court's other question regarding whether, what exactly the nature of the item has to be, that has to be a foregone conclusion, I think the case law is clear that it has to be either a contraband or evidence of a crime. It doesn't have to be a specific type of drug, it doesn't even have to be a specific type of contraband. All that is required is that there is a, that it is a foregone conclusion that it is contraband or evidence of a crime. Why is it a foregone conclusion under these circumstances that this is drugs? Your Honor, first I would say that it's foregone conclusion that it's contraband. Or contraband. Contraband. How is that a foregone conclusion? Thank you, Your Honor. Clothing wrapped around or used as a container, essentially. Certainly. Inside a suitcase when someone is traveling on a bus. How is it a foregone conclusion? It could be, for instance, the balloon, the opaque balloon that has powder nearby. I mean, that's, this is quite a stretch to say this was a foregone conclusion. I would argue that there's nothing in that, you know, from time immemorial that is particularly special about a balloon or something wrapped in masking tape or cellophane or tinfoil. But based on the experience of law enforcement officers, when they come to know that this is one of the ways that narcotics traffickers hide contraband, consistent with their experience and consistent with, you know, the other activity that took place in this particular encounter, that all leads to Special Agent Perry's foregone conclusion that the bundle contained narcotics. Just visually observing it, just, which is all he had done at the time of the arrest and before he conducted the search on the bus. He visually observed it, he hadn't seen the tinfoil, nothing else. Here, Your Honor, I think that there's an important distinction and it relies really on what Justice Stevens' concurrence says in Texas v. Brown and also in the court's, the Tenth Circuit's language in Corral. And that is, there's a difference between the privacy interest that you're invading, excuse me, the privacy interest that you're invading, let me start over, there's a accessory interest you're invading by seizing something, as a law enforcement officer, and the privacy interest that you invade by searching it. And so the standard for a plain view seizure is that some, that, you know, as relevant to this case, that it's immediately apparent that it's contraband. And then once you start dealing with whether there's wrapping and whether it's a container, you then lead to whether you, whether it's a foregone conclusion in order to be able to search that without a warrant. But you can search by touch as well as by touch. And what do you think the container was here? We have other foregone conclusion cases involving vials or glass or cases that are pretty obvious what's inside. This is just a wad inside of a leg. Anybody that's ever taken clothes out of a dryer knows that all kinds of things get put into legs and other things being tumbled around. So why is it so foregone that there was something in there that was hard? Certainly, Your Honor. So in this case, let me answer, respond to your first question first regarding the container. Let me ask the first, what was the container? What is the container? Your Honor, in this case, the container was the backpack. Was the what? The backpack. What about a subcontainer? What about the, what about the leg of the pant? Is that a container? What about the package itself? So we got three layers. I want you to tell me which or all of those are containers. So the backpack is absolutely a container, Your Honor. The backpack, however, is not a closed container because Mr. Johnson opened it in order to allow Special Agent Perry to look inside it. The thermal underwear, on appeal, Mr. Johnson is saying that that's a container. The government disputes that characterization. In Supplemental Record Photo 6, it's clear that the long underwear is not sealed in any way like a closed container. It, and that's also in Supplemental Record Photo 5, that, you know, if you were to just look in the opening in any of it, you could see the tinfoil. But if, even assuming that it's a container, the government thinks that it's still a foregone conclusion based on the circumstances of the encounter and based on the the concealment strategy, the size, shape, and concealment method of the bulbous bundle contained within this long underwear, that it's being, that it's a foregone conclusion that it's being used to transport narcotics. I guess I'm, that's part of, I'm just kind of dropping off there on your analysis. What, we've got a pair of thermal underwear that is, we don't know at this point, before Agent Perry picks it up and actually does what I would consider the search of the, of that container, the thermal underwear, we don't know what, what the nature of the item is. We don't know that it's wrapped in foil. We don't know that it's wrapped in anything. We don't know if it's soft. We don't know if it's hard. We don't know if it's got any kind of characteristics at all. We know nothing. So tell me what it is that makes that so apparent that it's, it's... First, I would say there's no search that occurs prior to the arrest. I believe there was some discussion of whether... No, I meant after the arrest. Okay. When he's got the bag, he's off the bus. Right. Defendant's off the bus. Agent Perry then, without a warrant, picks this item up out of the bag on the bus and handles it. And he testified that he handled it intentionally. That he handled it intentionally, I agree. That's a search. So assuming that that's a search, there are two things. Why wouldn't it be? I guess let's talk about that first. Well, because this goes to the distinction between a seizure and a search. And so if he's saying, yes, it's immediately apparent that this bundle contained within this long underwear is contraband of some kind, and he's entitled then to seize it, then, you know... And the record shows that there are some items that had come out of the backpack, that he's putting the items back into the backpack. But the record is somewhat undeveloped as to whether, as to the search on the bus once Mr. Johnson was already off the bus. In any case, if he does touch the bundle and that touch does constitute a search, there are two things. Number one, there's nothing in the record that establishes, prior to his touching of the bundle, that his intent was to learn about the nature of the bundle. Well, did he not, did he just touch it as he was putting stuff back in the backpack? And, oh, I just accidentally touched this. Or did he pick it up and hold it in his hands as a discrete object? Your Honor, the record establishes that he squeezed the bundle. Whether he held it separately from the backpack is not apparent from the record. Even the appellant in... But he found something and he squeezed it to test it. Why would you squeeze something just for the purpose of putting it back in the backpack? Isn't there a search object? Doesn't that imply at least enough of an implication that there was a search intent? It's unclear, Your Honor, but even if there was a search, the... Let's assume there was. So the proper remedy, if there was a search and if it occurred without a warrant, is not suppression of the contraband itself, but suppression of the information that was gained from the search. The squeezing of the bundle was not a but-for cause of the discovery of the contraband. Seeing it in the backpack was what led to the seizure. To the extent that there's a search, I suppose, you know, theoretically the court could suppress that kind of haptic sensation of the crinkling or whatever it is that that Special Agent Perry is describing in his physical contact. Then you've got, of course, fruit of the poisonous tree and you have to decide just how far down the suppression goes. Right, and that's what the government kind of brings up with respect to this search at DEA headquarters. So below, there was a lot of argument about the nature of the encounter. There was argument about certain statements that were made at DEA headquarters later, but the argument that was never made below by Mr. Johnson was if there was a lawful arrest supported by probable cause, then still the search at DEA headquarters was unlawful. The warrantless search at DEA headquarters was unlawful. They never made that argument below and, of course, the government didn't respond to it. What the government did say in its response brief on page 53 of Volume 1 of the record is if there's probable cause for the arrest, yeah, any subsequent search would be a search incident to arrest. And Mr. Johnson didn't respond to that argument at all. I couldn't quite hear what you said. If there's probable cause for the arrest, then, what did you say? Then the subsequent search of the backpack would be a lawful search incident to arrest. Incident to an arrest. Incident to an arrest, yes. That's true even though he was already off the bus. That may not be true on appeal, Your Honor, and I think that this court's opinion in Knapp, which I think was a 2019 case, would say that that search incident to arrest, if he's already out of the bus and not in swiping distance of the backpack, that it's not a search incident to arrest. So how do you get there then? What I'm saying also is that the government would have had a chance to develop the record as to whether there's an inventory search, whether there is... Why wouldn't you have developed that record below? Because the only search that was challenged below was the search occurring either immediately before or in the context... The challenge was made in the context of an argument that the arrest was unlawful. There are three times in the record that the defendant gets close to arguing that this search at DEA headquarters was unlawful, but none of them actually really get there. The first one is that in the suppression, in the reply at the district court level, Mr. Johnson says that Special Agent Perry didn't actually have probable cause to make the arrest until he knew what was in the bundle because he had unpacked thermal underwear and looked at it. So that's an argument regarding probable cause to arrest, not an argument regarding the search at DEA headquarters. Secondly, there's a supplement that was... It's a document 55 below. It was filed as the final supplement in this case, but it's supplementary authority introduced by Mr. Johnson at the district court level, and it argues that the search of the backpack was a fruit of an unlawful arrest. Again, that doesn't get to if the arrest is lawful, what is the nature of the search at DEA headquarters. That's also where this argument about whether it's a container and whether it's a closed container really makes it into the record for the first time. That's with respect to the bundle, not with respect to the backpack. And then finally... Well, it wouldn't have been an inventory search on the bus, would it? It would have... I mean, if you're trying to start inventory, it would have been only at the DEA office, and by then, if the initial search was unlawful, it's pretty hard to unring that bell. So, I mean, that's the problem. That's true, Your Honor. There was no argument about inventory search below, which is why I'm saying... No, but I think you argued that you would like to have responded further. Am I not correct about that? Yes, Your Honor. I assume that what you wanted to respond further on was to argue an inventory search. Am I correct on that? Yes, that there would be an opportunity for the government to develop the record as to an inventory search or another alternative basis, inevitable discovery, something like that. But because the only search that was challenged was the search on the bus, and again, in the context of the legality of the arrest, that was not addressed at the District Court. I'll say the final reference to that below is that in his pro se motion at the first volume of the Record on Appeal at 91 and 92, Johnson argued that you could have detained the bag, and it's true. I think that there certainly would have been reasonable suspicion to detain the bag and apply for a search warrant, but that wasn't necessary in this case because of the distinctive configuration. Why didn't you? Why didn't you just get a search warrant? Your Honor... It wasn't a perishable item or a time bomb or anything like that? Your Honor, I think this speaks to, based on his experience, Special Agent Perry's belief and firm belief, you know, to a point of foregone conclusion, that a bundle that is put in the sleeve of clothing constitutes, that it is contraband. Why would he take that risk if he was so certain? Why would he take that risk when he knows he's going to get it back to the station? It doesn't make sense. Certainly, Your Honor, I believe there were statements that were made by Mr. Johnson in this case at the DEA headquarters regarding what he thought that he was transporting, and so that may have played into the calculus. But in either case, it's the configuration of the packaging to Special Agent Perry with his training and experience resulted in the package proclaiming its contents, and this Court has found that a law enforcement officer's experience and knowledge of illegal and narcotics trafficking methods is something that can be taken into account in that consideration. I have one quick question before your time is up, but there was no video in this case, is that correct? That's correct, Your Honor. And typically in these Agent Perry cases, we're seeing, I mean, the standard procedure, they have this video that Agent Perry has been providing the disks, and they say DEA on them. Was that investigated here? Was there a video that just wasn't? Do you know anything about that? Your Honor, I did not handle this case at the district court level, but I am familiar with the government's obligation to disclose evidence, and I cannot imagine a circumstance in which there would be video and the government would not have disclosed it. Okay. My understanding is there was only audio recording. I thought maybe it wasn't, you know, it wasn't operable or something. Was there no testimony about that at all? My understanding is that it was only an audio recording, it was only ever intended to be an audio recording, and that's what was admitted in the record. Thank you. Appreciate the clarification. Rebuttal? I have a lot of trouble with the argument that the government didn't have an opportunity to raise the issue about whether they could have seized these items or searched them pursuant to an inventory search or a search incident to arrest. Mr. Johnson filed a motion to suppress all this evidence. That should have been point number one in their response. They don't need the defendant to say also that this shouldn't have been a valid inventory arrest or a search incident to arrest. That's on the government to respond to our challenge to the legality of the seizure. So that I think is a non-starter. I think he says that you, it's consistent with their waiver argument that you didn't make the argument about you know the search at the station. Well, he also makes that case, but I think that it is sufficiently raised both by the motion to reconsider where there's language that even if there was reasonable suspicion to seize the backpacks contents was unconstitutional. And we cite to all the cases including those that relate to the foregone conclusion of virtual certainty language. I understand that. I guess I'm just saying if we agree with you that or we agree with him that he didn't make that argument, does it have any impact on this whole, this other issue? It only relates to, as I understand their argument, only  conclusion of its contents. In other words, taking it out of the close if you accept the closed container argument that analogy that I'm making. But no, it has nothing to do with the plain view seizure at all. That is definitely before this court. There's no question about that. You argued in a reply brief below. Usually you can't raise new issues in a reply brief, but did the district court accept the additional arguments in your reply brief and its answer because that might cure the problem or didn't the court, did the district court say I'm not going to consider new issues raised on a reply brief? I don't believe there's any question that it did consider those things. Why? Because the court includes the same arguments, the same cases about foregone conclusion in virtual certainty and its memorandum opinion in order. The foregone conclusion in your reply brief? Yes, Your Honor. Okay, so that wasn't the initial idea of the court itself. That was your argument. Right, it was raised in the motion to reconsider, which was filed prior to the written memorandum. And the first time that that was raised was in your motion to reconsider? I don't want to say something that's not true, Your Honor. All I can say without reviewing it is that it was definitely in the motion to reconsider and in the supplemental authority, which was presented as part of the argument. That's good to know. Thank you. We very much appreciate your arguments. They've been helpful and good and we will take the matter or submit the matter. And let's see, counsel are excused.